## THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OHIO

| | |
|---|---|
| **KENNETH OKONSKI**, *et al.*, individually and on behalf of all others similarly situated**,** | |
| | Case No.: 1:23-cv-01548 |
| Plaintiffs, | |
| v. | Judge Patricia A. Gaughan |
| **PROGRESSIVE CASUALTY INSURANCE COMPANY,** | |
| | |
| Defendant. | |

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

## STATEMENT OF ISSUES TO BE DECIDED

1.      Does the proposed Settlement Class meet Federal Rule of Civil Procedure ("Rule") 23's requirements for class certification for settlement purposes under Fed. R. Civ. P 23(b)(2) and (b)(3)?

       **Plaintiffs' Answer: Yes.**

2.      Should William B. Federman of Federman & Sherwood and Gary M. Klinger of Milberg Coleman Bryson Phillips Grossman LLC be appointed as Class Counsel?

       **Plaintiffs' Answer: Yes.**

3.      Should Plaintiffs be appointed as Class Representatives for the Settlement Class?

       **Plaintiffs' Answer: Yes.**

4.      Based on an initial evaluation, is the proposed Settlement fair, adequate, and reasonable, sufficient to warrant notice to the proposed Settlement Class?

       **Plaintiffs' Answer: Yes.**

5.      Should Kroll be appointed as Claims Administrator?

       **Plaintiffs' Answer: Yes.**

6.      Does the Notice Plan satisfy the requirements of Rule 23 and Due Process?

       **Plaintiffs' Answer: Yes.**

## <u>SUMMARY OF THE ARGUMENT PRESENTED</u>

Plaintiffs Kenneth Okonski, Bradley Okonski, Edward Reis, Tosif Khan, Kulsoom Tosif, Eduardo Barbosa, Rebecca Johnson, Stephen Johnson, Roxanne Trigg, Dodi Waden, and Giovanni Madaffari (collectively, "Plaintiffs") request preliminary approval of a proposed class action settlement with Defendant Progressive Casualty Insurance Company ("Defendant" or "Progressive") that provides a non-reversionary settlement fund of $3,250,000 to Settlement Class Members whose personally identifiable information ("PII") was potentially accessed in a data security incident involving one of Progressive's third-party call centers. Plaintiffs aver the settlement is fair, adequate, and reasonable and respectfully request an Order: (i) granting preliminary approval of the proposed Class Action Settlement; (ii) preliminarily certifying a class for the purposes of Settlement; (iii) appointing Plaintiffs as Class Representatives; (iv) appointing William B. Federman of Federman & Sherwood and Gary M. Klinger of Milberg Coleman Bryson Phillips Grossman LLC as Class Counsel; (v) approving the Parties' proposed form and method of giving notice of the pendency of this action and the Settlement to the Settlement Class; (vi) directing that notice be given to the Settlement Class; (vii) scheduling a hearing at which time the Court will consider the request for final approval of the Settlement and request for attorneys' fees, expenses, and service awards to Plaintiffs; and (viii) granting such other relief and further relief as the Court deems just and proper.

## TABLE OF CONTENTS

I.     INTRODUCTION ...................................................................................................... 1

II.    FACTUAL AND PROCEDURAL BACKGROUND .......................................... 2

III.   THE SETTLEMENT TERMS ............................................................................... 3

    A.   Definition of the Settlement Class ............................................................... 3

    B.   Benefits to the Settlement Class ................................................................... 4

       1.   Non-Reversionary Settlement Fund ........................................................ 4

       2.   Documented Loss Payment ...................................................................... 4

       3.   CMIS ............................................................................................................ 5

       4.   Cash Award ................................................................................................. 5

    C.   Notice Program, Opt-Outs, and Exclusions ............................................... 5

    D.   Attorney's Fees, Expenses, and Service Awards ....................................... 5

IV.    ARGUMENT AND AUTHORITY ........................................................................ 6

    A.   The Court Should Certify the Proposed Settlement Class under Rule 23(a) .............. 6

    B.   Rule 23(b) Requirements Are Met for Purposes of Settlement ................................... 9

    C.   The Court Should Appoint Plaintiffs' Counsel as Class Counsel ............................ 11

    D.   The Proposed Settlement is Fundamentally Fair, Reasonable, and Adequate, Warranting Preliminary Approval. .......................................................................... 11

       1.   The Settlement Agreement is the Result of Informed, Non-Collusive, Arm's Length Negotiations Between Parties Represented by Knowledgeable and Experienced Counsel. .................................................................................................................... 12

       2.   The Complexity, Expense, and Likely Duration of the Litigation Favors Approval of the Settlement. ......................................................................................................... 13

3. The Parties Engaged in Sufficient Fact-Finding. ...................................................... 14

4. The Settlement Provides Favorable Relief When Weighed Against the Likelihood of Success on the Merits. ............................................................................................... 15

5. The Reaction of Absent Settlement Class Members ................................................ 17

6. The Settlement is in the Public's Interest ................................................................ 17

V.  NOTICE PROGRAM .......................................................................................................... 17

VI.  CONCLUSION ................................................................................................................... 18

## __TABLE OF AUTHORITIES__

__Cases__

*Afro Am. Patrolmen's League v. Duck,*

    503 F.2d 294 (6th Cir. 1974) ............................................................................... 7

*Amchem Prods., Inc. v. Windsor,*

    521 U.S. 591 (1997)............................................................................. 6, 9, 10

*Beattie v. CenturyTel, Inc.,*

    511 F.3d 554 (6th Cir. 2007) ............................................................................ 8, 9

*Bert v. AK Steel Corp.,*

    2008 WL 4693747 (S.D. Ohio Oct. 23, 2008)........................................................ 13

*Bittinger v. Tecumseh Prods. Co.,*

    123 F.3d 877 (6th Cir. 1997) .............................................................................. 8

*Comcast Corp. v. Behrend,*

    569 U.S. 27 (2013)........................................................................................ 6

*Daffin v. Ford Motor Co.,*

    458 F.3d 549 (6th Cir. 2006) .............................................................................. 7

*Delphi Corp. Sec., Derivative & "ERISA" Litig.,*

    248 F.R.D. 483 (E.D. Mich. 2008) ................................................................. 13, 14

*Fox v. Iowa Health Sys.,*

    2021 WL 826741 (W.D. Wis. Mar. 4, 2021).......................................................... 16

*Garner Properties & Mgmt., LLC v. City of Inkster,*

    333 F.R.D. 614 (E.D. Mich. 2020) ....................................................................... 8

*Hammond v. The Bank of N.Y. Mellon Corp.,*

2010 U.S. Dist. LEXIS 71996 (S.D.N.Y. June 25, 2010) ........................................................ 15

*In re Am. Med. Sys., Inc.*,

    75 F.3d 1069 (6th Cir. 1996) ......................................................................................... 8

*In re Cardizem CD Antitrust Litig.*,

    218 F.R.D. 508 (E.D. Mich. 2003) ................................................................................ 17

*In re Hannaford Bros. Co. Cust. Data Sec. Breach Litig.*,

    293 F.R.D. 21 (D. Me. 2013) ........................................................................................ 16

*In re Packaged Ice Antitrust Litig.*,

    2010 WL 3070161 (E.D. Mich. Aug. 2, 2010) ............................................................ 12

*In re Target Customer Data Sec. Breach Litig.*,

    No. MDL 14-2522 (D. Minn. Mar. 18, 2015) .............................................................. 16

*In re Telectronics Pacing Sys.*,

    137 F. Supp. 2d 985 (S.D. Ohio 2001) ........................................................................ 12

*In re U.S. Office of Pers. Mgmt. Data Sec. Breach Litig.*,

    266 F. Supp. 3d 1, 19 (D.D.C. 2017) ..................................................................... 14, 15

*Int'l Union, United Auto., Aerospace & Agr. Implement Workers of Am. v. Gen. Motors Corp.*,

    497 F.3d 615 (6th Cir. 2007) ................................................................................ 9, 12, 15

*Jackson v. Nationwide Ret. Sols., Inc.*,

    No. 2:22-CV-3499, 2024 WL 958726 (S.D. Ohio Mar. 5, 2024) ................................ 16

*Kinder v. Nw. Bank*,

    278 F.R.D. 176 (W.D. Mich. 2011) ............................................................................... 7

*Kritzer v. Safelite Solutions, LLC*,

    2012 WL 1945144 (S.D. Ohio May 30, 2012) ....................................................... 14, 15

*McKnight v. Erico Int'l Corp.*,

    655 F. Supp. 3d 645 (N.D. Ohio 2023) ................................................................. 6, 10

*Powers v. Hamilton Cty. Pub. Def. Comm'n*,

    501 F.3d 592 (6th Cir. 2007) ................................................................................. 10

*Robinson v. Shelby Cty. Bd. of Educ.*,

    566 F.3d 642 (6th Cir. 2009) ................................................................................. 12

*Sprague v. General Motors Corp.*,

    133 F.3d 388 (6th Cir. 1998) ................................................................................. 8

*Tenn. Ass'n of Health Maint. Orgs., Inc. v. Grier*,

    262 F.3d 559 (6th Cir. 2001) ................................................................................. 12

*Thacker v. Chesapeake Appalachia, L.L.C.*,

    259 F.R.D. 262 (E.D. Ky. 2009) ..................................................................... 12, 13

*The Home Depot, Customer Data Sec. Breach Litig.*,

    No. 1:14-MD-2583 (N.D. Ga. Mar. 7, 2016) ........................................................ 16

*Thomsen v. Morley Companies, Inc.*,

    639 F. Supp. 3d 758 (E.D. Mich. 2022) ............................................................... 16

*Wal-Mart Stores, Inc. v. Dukes*,

    131 S. Ct. 2541 (2011) ..................................................................................... 7, 9

*Whitlock v. FSL Mgmt., LLC*,

    843 F.3d 1084 (6th Cir. 2016) ............................................................................. 6

**Rules**

Fed. R. Civ. P. 23 ........................................................................................... passim

**<u>Treatises</u>**

A. Conte & H.B. Newberg, Newberg on Class Actions, § 11.25, 3839 (4th ed. 2002) .............. 11

Manual for Complex Litigation § 30.41 (3d ed. 1995)................................................... 12

Manual for Complex Litigation, § 21.632 (4th ed. 2004)....................................... 7, 12

## I.    INTRODUCTION

On May 19, 2023, Progressive received written notification from one of its third-party call centers that an undisclosed number of the call center's employees improperly shared their Progressive access credentials with unauthorized individuals who purportedly performed the employees' call center job duties (the "Security Incident"). (Consolidated Amended Class Action Complaint ("Compl."), ¶ 3, ECF No. 27). The information potentially accessed without authorization during the Security Incident included personally identifiable information ("PII") such as, first and last names, dates of birth, driver's license numbers, email addresses, phone numbers, financial account numbers, routing numbers, financial institution names, credit/debit card numbers, expiration dates, and Social Security numbers. (*Id.* ¶ 6). Plaintiffs received formal notice of the Security Incident on or around August 1, 2023, and commenced this class action litigation, alleging Defendant failed to sufficiently protect their PII. (*Id.* ¶¶ 2, 8).

After months of litigation and several weeks of hard-fought settlement negotiations, the Parties have reached a fair, reasonable and adequate settlement that provides substantial benefits to the Settlement Class. Specifically, the Settlement Agreement[1] provides a non-reversionary Settlement Fund of $3,250,000 that will: (i) reimburse Settlement Class Members for up to $5,000 for Documented Losses (SA, ¶ 28(b)); and (ii) provide (3) three years of Credit Monitoring and Insurance Services ("CMIS") (*id.* ¶ 29).  Additionally, and in lieu of receiving a reimbursement for Documented Losses, Settlement Class Members may elect to receive a Cash Award, which is a pro rata cash payment from the Net Settlement Fund after payment of all valid CMIS claims and

---

[1] Unless otherwise stated, all capitalized terms shall have the definitions set forth in the Settlement Agreement attached as **Exhibit 1** to the Declaration of William B. Federman in Support of Plaintiffs' Unopposed Motion for Preliminary Approval of Class Action Settlement, filed contemporaneously herewith. Citations to the Settlement Agreement will be abbreviated as "SA, ¶ ___."

Documented Loss Payments. (*Id.* ¶¶ 28(a), 30). This is an outstanding result for Plaintiffs and the Settlement Class.

As further discussed below, the Settlement falls well within the range of judicial approval and includes a comprehensive notice plan. As such, preliminary approval of the proposed class action settlement is warranted.

## II.    FACTUAL AND PROCEDURAL BACKGROUND

Progressive is an insurance company based in Mayfield Village, Ohio, which provides a variety of insurance products. (Compl. ¶ 29). Plaintiffs and the Class provided their PII to Defendant for insurance products and services. (*Id.* ¶ 30).

On May 19, 2023, Progressive received written notification from one of its third-party call centers regarding a data security incident involving some of the call center's representatives. (*Id.* ¶ 41). Plaintiffs allege the call center's employees improperly shared their Progressive access credentials with unauthorized individuals, who were then able to access their PII. (*Id.* ¶ 42). "[T]he earliest date of employment for any of the potentially involved employees by the third-party service provider was May 2021, but most were hired during or after the fall of 2022." (*Id.* ¶ 45). The PII potentially accessed without authorization included the PII of Plaintiffs and the Class, including their first and last names, dates of birth, driver's license numbers, email addresses, phone numbers, financial account numbers, routing numbers, financial institution names, credit/debit card numbers, expiration dates, and Social Security numbers. (*Id.* ¶ 47). Progressive notified Plaintiffs and the Class of the Security Incident in or around August 2023. (*Id.* ¶ 49).

After receiving notice of the Security Incident, Plaintiffs filed separate complaints in August 2023, and on August 25, 2023, filed their motion to consolidate the cases in this Court (*see* ECF Nos. 4, 5, 6), which was granted on September 22, 2023 (ECF No. 13). The Parties exchanged initial disclosures on November 20, 2023, and on the same day Plaintiffs filed their Consolidated

Class Action Complaint (ECF No. 27) alleging the following claims for relief: (i) negligence; (ii) unjust enrichment; (iii) breach of implied contract; (iv) declaratory judgment; (v) negligent training, hiring, and supervision; (vi) violations of California's Consumer Privacy Act; (vii) violations of the California Consumer Records Act;  (viii) violations of the California Unfair Competition Law; (ix) violation of the Florida Deceptive and Unfair Trade Practices Act; (x) violations of the Illinois Consumer Fraud Act; (xi) breach of fiduciary duty; and (xii) intrusion upon seclusion. In response, Progressive filed a Motion to Dismiss (ECF No. 31), which Plaintiffs opposed. (ECF No. 33). Shortly after the Motion to Dismiss was fully briefed, the Parties engaged in informal discovery and explored the viability of early resolution. (Declaration of William B. Federman in Support of Plaintiffs' Motion for Preliminary Approval of Class Action Settlement ("Federman Decl."), ¶ 4).

On May 14, 2024, the Parties engaged in a full day mediation session with the Hon. Wayne R. Andersen (Ret.) of JAMS. (*Id.* ¶ 5). After an all-day mediation session filled with hard arms-length bargaining on both sides, Judge Andersen submitted a mediator's proposal that the Parties ultimately accepted. (*Id.*) The terms of the mediator's proposal (and additional reasonable terms agreed to by the Parties) are memorialized in the Settlement Agreement, which was negotiated at arm's-length, in good faith and without collusion, by capable and experienced counsel, with full knowledge of the facts, the law, and the inherent risks in the Litigation, and with the active involvement of the Parties. (*Id.*) Plaintiffs now seek preliminary approval of the Settlement Agreement.

## III.    THE SETTLEMENT TERMS

### A.  Definition of the Settlement Class

Plaintiffs request certification, for settlement purposes only, a nationwide class defined as follows:

> [T]he individuals in the United States who Progressive identified as potentially having their personal information viewed by an unauthorized individual because of the security incident experienced by TTEC, one of Progressive's third-party call center vendors, from May 2021 to May 2023.

(SA, ¶ 14(zz)). The Settlement Class specifically excludes: (i) Defendant, any entity in which Defendant has a controlling interest, and Defendant's affiliates, parents, subsidiaries, officers, directors, legal representatives, successors, and assigns; (ii) any judge, justice, or judicial officer presiding over the Litigation and the members of their immediate families and judicial staff; and (iii) any individual who timely and validly excludes themselves from the Settlement. (*Id.*)

### B. Benefits to the Settlement Class

#### 1. Non-Reversionary Settlement Fund

Defendant will establish a non-reversionary Settlement Fund of $3,250,000. (*Id.* ¶ 14(ccc)). The Settlement Fund will be used to pay for: (i) reasonable Notice and Claims Administration Costs incurred pursuant to this Settlement Agreement as approved by Class Counsel and the Court, (ii) any taxes owed by the Settlement Fund, (iii) any Service Awards approved by the Court, (iv) any Attorneys' Fees, Costs, and Expenses Award approved by the Court, and (v) any payments made or other benefits provided to Settlement Class Members, pursuant to the terms and conditions of this Settlement Agreement. (*Id.* ¶ 21).

#### 2. Documented Loss Payment

All Settlement Class Members may submit a claim for a Settlement Payment of up to $5,000 for reimbursement in the form of a Documented Loss Payment. (*Id.* ¶ 28(b)). Settlement Class Members can receive a Documented Loss Payment by submitting to the Settlement Administrator the following: (i) a valid Claim Form electing to receive the Documented Loss Payment benefit; (ii) an attestation regarding any actual and unreimbursed Documented Loss; and (iii) Reasonable Documentation that demonstrates the Documented Loss to be reimbursed

pursuant to the terms of the Settlement. (*Id.*).

### 3.  CMIS

All Settlement Class Members are automatically eligible to receive, free of charge, three (3) years of Credit Monitoring and Insurance Services, which will include up to $1 million dollars of identity theft insurance coverage and three bureau credit monitoring. (*Id.* ¶ 29).

### 4.  Cash Award

Settlement Class Members who do not elect to receive a Documented Loss Payment may submit a claim for a *pro rata* portion of the Settlement Fund. (*Id.* ¶ 28(a)). The amount of this benefit will be based on the number of claims received and the amount of funds remaining in the Settlement Fund following the payment of any Attorneys' Fees and Expenses Award, any Service Awards approved by the Court, the Costs of Claims Administration, CAFA Notice, the cost of CMIS, and claims for Documented Loss Payments. (*Id.* ¶ 30).

### C.  Notice Program, Opt-Outs, and Exclusions

The proposed Notice scheme provides all information required by Rule 23(c)(2)(B). The Notice Plan lays out a program for notifying Class members of the Settlement and their rights in simple terms. (*See* SA, ¶¶ 46, 51–61). The details of the notice process, opt-outs, and exclusions are outlined in Section V, *infra*.

### D.  Attorney's Fees, Expenses, and Service Awards

The Parties did not discuss payment or the amount of Attorneys' Fees and Expenses Award and/or Service Awards to Plaintiffs until after the substantive terms of the Settlement had been agreed upon. (Federman Decl., ¶ 5). Class Counsel will move the Court for an award of their reasonable attorneys' fees incurred in an amount not to exceed 1/3 (33%) of the Settlement Fund, and reimbursement of documented costs and expenses of an amount not to exceed $50,000.00. (SA, ¶ 73). Class Counsel will also move the Court for Service Awards for the Class

Representatives in the amount of $2,000.00 each. (*Id.* ¶ 74). The amount of the Attorneys' Fees, Expenses and Service Award are all subject to Court approval and will be paid from the Settlement Fund. (*Id.* ¶¶ 73–77).

## IV.     ARGUMENT AND AUTHORITY

Under Federal Rule of Civil Procedure ("Rule") 23(e), "a class proposed to be certified for purposes of settlement" requires court approval. "A court may approve the settlement only after a hearing and only on a finding that the settlement 'is fair, reasonable, and adequate' after considering certain factors listed in the Rule." *McKnight v. Erico Int'l Corp.*, 655 F. Supp. 3d 645, 655 (N.D. Ohio 2023) (citing Fed. R. Civ. P. 23(e)(2)). "The Rule directs the Court to consider the representation class counsel provided, whether the parties negotiated the settlement at arm's length, the adequacy of the relief provided to the class, and the relative treatment of class members relative to one another." *Id.* The Sixth Circuit also requires consideration of the following factors:

> (1) the risk of fraud or collusion; (2) the complexity, expense and likely duration of the litigation; (3) the amount of discovery engaged in by the parties; (4) the likelihood of success on the merits; (5) the opinions of class counsel and class representatives; (6) the reaction of absent class members; and (7) the public interest.

*Whitlock v. FSL Mgmt., LLC*, 843 F.3d 1084, 1093 (6th Cir. 2016) (citation omitted).

In addition to the requirements found in Rule 23(e), and those proscribed by the Sixth Circuit, Plaintiffs must also demonstrate the four (4) procedural requirements of Rule 23(a)—commonly known as numerosity, commonality, typicality, and adequacy—and one of the requirements of Rule 23(b). *Comcast Corp. v. Behrend*, 569 U.S. 27, 33 (2013).

### A.  The Court Should Certify the Proposed Settlement Class under Rule 23(a)

The first step for a court faced with a motion for preliminary approval is to certify the proposed settlement class for settlement purposes as meeting the requirements of Rule 23. *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997); *see also* Manual for Complex

Litigation, § 21.632 (4th ed. 2004). The Plaintiffs must demonstrate that the proposed class and proposed class representative meet four requirements: (1) numerosity; (2) commonality; (3) typicality; and (4) adequacy of representation. Fed. R. Civ. P. 23(a)(1)–(4). Each of these requirements is met here.

*Numerosity*. The first prerequisite is that the "class is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). The Sixth Circuit has noted that as few as thirty-five class members is sufficient. *Afro Am. Patrolmen's League v. Duck*, 503 F.2d 294, 298 (6th Cir. 1974); *Daffin v. Ford Motor Co.*, 458 F.3d 549, 552 (6th Cir. 2006). The Settlement Class here includes approximately 350,000 individuals, satisfying the numerosity requirement. (SA, ¶ 14(aaa)).

*Ascertainability*. The Class is ascertainable as well. *See Kinder v. Nw. Bank*, 278 F.R.D. 176, 182 (W.D. Mich. 2011) ("[T]he requirement that there be a class will not be deemed satisfied unless the class description is sufficiently definite so that it is administratively feasible for the court to determine whether a particular individual is a member."). Identifying Settlement Class Members here is simple and objective: Defendant has a list of all individuals to whom it sent notice that their information may have been exposed in the Security Incident. As such, ascertainability is satisfied.

*Commonality*. Next, there must be "questions of law or fact common to the class." Fed. R. Civ. P. 23 (a)(2). Commonality may be shown when the claims of all class members "depend upon a common contention," with "even a single common question" sufficing. *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2545, 2557 (2011). The common contention must be capable of class-wide resolution and the "determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Id.* at 2545. Here, Plaintiffs' claims turn on the adequacy of Progressive in safeguarding and protecting Plaintiffs' and the Class's PII. Evidence to resolve that claim does not vary among class members, and so can be fairly resolved,

at least for purposes of settlement, for all Settlement Class Members at once. Thus, commonality is met.

**Typicality.** A class representative's claims must also be typical of the putative class they seek to represent. Fed. R. Civ. P. 23(a)(3). A Plaintiffs satisfies the typicality requirement where their "claim arises from the same event or practice or course of conduct that gives rise to the claims of other class members, and if his or her claims are based on the same legal theory." *Beattie v. CenturyTel, Inc.*, 511 F.3d 554, 561 (6th Cir. 2007). Typicality is designed to assess "whether a sufficient relationship exists between the injury to the named Plaintiffs and the conduct affecting the class, so that the court may properly attribute a collective nature to the challenged conduct." *Sprague v. General Motors Corp.*, 133 F.3d 388, 399 (6th Cir. 1998). The class representative's claims need not be identical; rather, they need only "arise from the same course of conduct." *Bittinger v. Tecumseh Prods. Co.*, 123 F.3d 877, 884 (6th Cir. 1997). "In determining whether the requisite typicality exists, a court must inquire whether the interests of the named Plaintiffs are 'aligned with those of the represented group,' such that 'in pursuing his own claims, the named Plaintiffs will also advance the interests of the class members.'" *Garner Properties & Mgmt., LLC v. City of Inkster*, 333 F.R.D. 614, 623 (E.D. Mich. 2020) (quoting *In re Am. Med. Sys., Inc.*, 75 F.3d 1069, 1082 (6th Cir. 1996)). Plaintiffs' interests are aligned with the Settlement Class because they received notice letters from Progressive that their PII may have been compromised as a result of the Security Incident and were therefore impacted by the same allegedly inadequate data precautions that allegedly harmed the rest of the Settlement Class. Thus, Typicality is met.

**Adequacy.** Rule 23(a)(4) requires that the class representative "fairly and adequately protect the interests of the class." *Id.* "Class representatives are adequate when it appears that they will vigorously prosecute the interest of the class through qualified counsel…which usually will be the case if the representatives are part of the class and possess the same interest and suffer the

same injury as the class members." *Int'l Union, United Auto., Aerospace & Agr. Implement Workers of Am. v. Gen. Motors Corp.*, 497 F.3d 615, 626 (6th Cir. 2007). The Class Representatives here have no conflicts with the Settlement Class and have demonstrated their adequacy by: (i) selecting well-qualified Class Counsel; (ii) producing information and documents to Class Counsel to permit investigation and development of the complaints; (iii) coordinating with Class Counsel throughout the litigation; (iv) reviewing the settlement agreement; and (v) supervising the Litigation. (Federman Decl., ¶ 12). Moreover, Class Counsel are adequate representatives because they have vast experience as vigorous class action litigators and are well suited to advocate on behalf of the Class. (*See id.* at Exs. 2–3).

**B. Rule 23(b) Requirements Are Met for Purposes of Settlement.**

After satisfying Rule 23(a), Plaintiffs must also satisfy one of the three requirements of Rule 23(b) for the Court to certify the proposed class. *Wal-Mart Stores, Inc.*, 131 S. Ct. at 2548. Under Rule 23(b)(3), a class action may be maintained where: (i) the questions of law and fact common to members of the class predominate over any questions affecting only individuals, and (ii) the class action mechanism is superior to the other available methods for the fair and efficient adjudication of the controversy. Fed. R. Civ. P. 23(b)(3). "A Plaintiffs must establish that 'the issues in the class action that are subject to generalized proof, and thus applicable to the class as a whole . . . predominate over those issues that are subject only to individualized proof.'" *Beattie*, 511 F.3d at 564. The superiority requirement of Rule 23(b)(3) considers "the difficulties likely to be encountered in the management of a class action" and whether individual litigation would yield small recoveries. *Id.*; *see also Amchem*, 521 U.S. at 617 ("The policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights.").

***Common Questions of Law and Fact Predominate.*** Predominance focuses on whether the

class is sufficiently cohesive to warrant class-wide adjudication. *Amchem*, 521 U.S. at 623. Predominance is met if a single factual or legal question is "at the heart of the litigation." *See Powers v. Hamilton Cty. Pub. Def. Comm'n*, 501 F.3d 592, 619 (6th Cir. 2007). Here, Defendant's alleged course of conduct was uniform over the entire Class. This presents multiple questions of law and fact that are central to liability and thus predominate over any issues affecting individual class members. And since class-wide determination of this issue will be the same for all, determining whether any class member has a right of recovery, the predominance requirement is readily satisfied.

***A Class Action is the Superior Method of Adjudication.*** Certification of this action as a class action is superior to other methods to fairly, adequately, and efficiently resolve the claims asserted. "Superiority requires courts to consider whether a class action 'is a better way than individual litigation to adjudicate a claim.'" *McKnight*, 655 F. Supp. 3d at 658 (citation omitted). Such is especially true in situations which "vindicat[e] the rights of groups of people who individually would be without effective strength to bring their opponents into court at all." *Amchem*, 521 U.S. at 617. Adjudicating individual actions here is impracticable: the amount in dispute for individual class members is too small, the technical issues involved too complex, and the expert testimony and document review too costly. The individual amounts here are insufficient to allow anyone to file and prosecute an individual lawsuit—at least not with the aid of competent counsel. Rather, individual prosecution of claims would be prohibitively expensive, needlessly delay resolution, and may lead to inconsistent rulings.[2] Thus, the Court should certify the Class

---

[2] Because this Action is being settled on a class-wide basis, such theoretical inefficiencies are resolved—and the Court need not consider further issues of manageability relating to trial. *See Amchem*, 521 U.S. at 620 ("Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems").

pursuant to Rule 23(b)(3).

### C.  The Court Should Appoint Plaintiffs' Counsel as Class Counsel

The next step when deciding whether to preliminarily approve a settlement is to appoint Class Counsel. Under Rule 23, "a court that certifies a class must appoint class counsel . . . [who] must fairly and adequately represent the interests of the class." Fed. R. Civ. P. 23(g)(1)(B). In making this determination, courts generally consider the following factors: (i) proposed class counsel's work in identifying or investigating potential claims; (ii) proposed counsel's experience in handling class actions or other complex litigation, and the types of claims asserted in the case; (iii) proposed counsel's knowledge of the applicable law; and (iv) proposed counsel's resources committed to representing the class. Fed. R. Civ. P. 23(g)(1)(A)(i–iv).

Proposed Settlement Class Counsel ("Class Counsel") have extensive experience in prosecuting data breach class actions and other complex cases. (Federman Decl., ¶ 10). Further, Class Counsel have diligently investigated and prosecuted this case by dedicating substantial resources to it and successfully negotiating this Settlement. (*Id.* ¶ 8). Thus, the Court should appoint William B. Federman and Gary M. Klinger as Settlement Class Counsel.

### D.  The Proposed Settlement is Fundamentally Fair, Reasonable, and Adequate, Warranting Preliminary Approval.

Following certification of the Settlement Class, the Court may approve the settlement only "on finding that it is fair, reasonable, and adequate." Fed. R. Civ. P. 23(e); *see also* A. Conte & H.B. Newberg, Newberg on Class Actions, § 11.25, 3839 (4th ed. 2002). This process includes three steps: "(1) the court should determine whether the compromise embodied in the decree is illegal or tainted with collusion; (2) members of the class must be given notice of the proposed settlement; and (3) a hearing must be held to determine whether the decree is fair to those affected, adequate and reasonable." *Tenn. Ass'n of Health Maint. Orgs., Inc. v. Grier*, 262 F.3d 559, 565-

66 (6th Cir. 2001). Judicial policy favors voluntary conciliation and settlement of complex class actions. *In re Telectronics Pacing Sys.*, 137 F. Supp. 2d 985, 1008–09 (S.D. Ohio 2001). Approval of a class settlement is discretionary, and a Court's decision will only be upended upon a showing of an abuse of discretion. *Robinson v. Shelby Cty. Bd. of Educ.*, 566 F.3d 642, 647 (6th Cir. 2009).

First, the preliminary hearing's purpose is often described as to determine if the proposed settlement is "within the range of possible approval." Manual for Complex Litigation § 30.41 (3d ed. 1995); *see also In re Packaged Ice Antitrust Litig.*, 2010 WL 3070161, at *4 (E.D. Mich. Aug. 2, 2010). The Court must "ensur[e] that the proposed settlement is not illegal or collusive" based upon the "issues and evidence, as well as the arms-length nature of the negotiations prior to the proposed settlement." *Thacker v. Chesapeake Appalachia, L.L.C.*, 259 F.R.D. 262, 270 (E.D. Ky. 2009). Preliminary approval requires only an "initial evaluation" of the fairness of the settlement made on the basis of written submissions and informal presentations from the settling parties. Manual for Complex Litigation, § 21.632 (4th ed. 2004).

In analyzing whether a settlement agreement is fair, reasonable, and adequate, courts in this Circuit typically consider the Sixth Circuit's non-exhaustive factors: "(1) the risk of fraud or collusion; (2) the complexity, expense and likely duration of the litigation; (3) the amount of discovery engaged in by the parties; (4) the likelihood of success on the merits; (5) the opinions of class counsel and class representatives; (6) the reaction of absent class members; and (7) the public interest." *Int'l Union*, 497 F.3d at 631. The Settlement Agreement before the Court meets each of these considerations.

### 1. The Settlement Agreement is the Result of Informed, Non-Collusive, Arm's Length Negotiations Between Parties Represented by Knowledgeable and Experienced Counsel.

The first factor heavily weighs in favor of granting preliminary approval. "Courts presume the absence of fraud or collusion in class action settlements unless there is evidence to the

12

contrary." *Thacker*, 695 F. Supp. 2d at 531. Negotiations overseen by a neutral mediator are given extra weight. *See Bert v. AK Steel Corp.*, 2008 WL 4693747, at *2 (S.D. Ohio Oct. 23, 2008) ("participation of an independent mediator in settlement negotiations virtually insures (sic) that the negotiations were conducted at arm's length and without collusion between the parties"). This case was settled through the help and oversight of a highly respected mediator, Hon. Wayne R. Andersen (Ret.) of JAMS. Judge Andersen has substantial experience mediating and resolving complex class actions, including data breach class action settlements. (*See* Federman Decl., ¶ 5). Judge Andersen's active involvement ensured that the negotiations proceeded at arm's length. Indeed, it was not until after an all-day mediation session with hard bargaining on both sides that a mediator's proposal was ultimately made and later accepted. (*Id.*)

The Parties were both represented in these negotiations by knowledgeable and highly experienced counsel.  In addition to the qualifications of Proposed Class Counsel set out in the Federman Declaration, Defendant in this case was represented in the negotiations and is represented in this case by senior partners from King & Spalding, an AmLaw 100 law firm that is highly regarded in the data breach defense space, and that received The American Lawyer's Best Law Firm of the Year award in late 2023. The defense team in this matter has been recognized as top ranked lawyers by Chambers, Cybersecurity Docket, Legal 500, Law360, and other publications.  While the negotiations were always collegial and professional, there is no doubt that these negotiations were adversarial and at arm's length.

### 2. The Complexity, Expense, and Likely Duration of the Litigation Favors Approval of the Settlement.

The second factor the Sixth Circuit evaluates also supports preliminary approval. *See In re Delphi Corp. Sec., Derivative & "ERISA" Litig.*, 248 F.R.D. 483, 497 (E.D. Mich. 2008) ("[E]xpense and possible duration of litigation are major factors to be considered in evaluating the

reasonableness of a settlement"). "For class actions in particular, courts view settlement favorably because it avoids the costs, delays and multitudes of other problems associated." *Id.*

Simply put, this case could drag on for years.[3] Continued pre-trial litigation would be extensive, with voluminous discovery needed from Progressive and the third-party call center that Progressive used. Experts would be required to testify regarding Progressive's and the third-party call center's data security practices, industry standard practices, and how their practices deviated therefrom. Substantial fact-finding would be required into what information was taken, how, and what impact this had and will have on the Settlement Class. Plaintiffs would need to survive potential dispositive motions and prevail on a motion for class certification. Such motion practice, and potential appeals, could consume years, during which the law could change and threaten the claims. Given the complexity of the claims and arguments here, a lengthy trial would follow. Litigation would be extraordinarily complex, and it could take several years for the Class to see any real recovery, if any at all. Thus, this factor favors approval.

### 3.  The Parties Engaged in Sufficient Fact-Finding.

The Court next asks whether the Plaintiffs have enough information to "adequately assess their case and the desirability of the proposed settlement" at this stage of the proceedings. *Kritzer v. Safelite Solutions, LLC*, 2012 WL 1945144, at *7 (S.D. Ohio May 30, 2012). Courts often "defer to the judgment of experienced trial counsel with regard to the evaluation of the strength of the case and the desirability of settlement at this stage of the proceeding." *Id.*

Here, although the Parties reached a proposed settlement before the end of the discovery period, Class Counsel made an informed decision regarding the appropriateness of settlement.

---

[3] *See, e.g.*, *In re U.S. Office of Pers. Mgmt. Data Sec. Breach Litig.*, No. 15–1394 (ABJ) (D.D.C.); MDL Docket No. 2664 (settlement announced in June 2022, after seven full years of litigation).

Prior to negotiating the Settlement, Class Counsel sought and obtained informal discovery from Progressive on a number of topics, including: the number of individuals whose PII was compromised during the Security Incident; the types of PII potentially compromised; the mechanics of the Security Incident; the remedial actions Progressive took after the Security Incident; and the terms of any potentially applicable insurance coverage. (Federman Decl., ¶ 7). Class Counsel thoroughly evaluated this in their analysis of damages. (*Id.*). Through the above process and the mediation, Class Counsel came to understand the size of the Settlement Class, the issues at hand, and obtain an excellent settlement for class members. (*Id.* ¶ 8); *see also Int'l Union*, 2008 WL 2968408, at *26 (noting the use of informal discovery as an adequate tool for class counsel to make an informed decision). Combined with their experience, Class Counsel had all the information needed to "adequately assess the[] case and the desirability of the proposed settlement." *See Kritzer*, 2012 WL 1945144, at *7. Thus, the Court should find that Class Counsel conducted sufficient fact-finding.

> **4. The Settlement Provides Favorable Relief When Weighed Against the Likelihood of Success on the Merits.**

To "judge the fairness of a proposed compromise," a court "weigh[s] the Plaintiffs' likelihood of success on the merits against the amount and form of the relief offered in the settlement." *Int'l Union*, 497 F.3d at 631. While Plaintiffs are confident in their claims, there is risk here, as is true in all complex class actions—and this area of law is especially risky. Historically, data breach cases face substantial hurdles in surviving even the pleading stage. *See, e.g.*, *Hammond v. The Bank of N.Y. Mellon Corp.*, 2010 U.S. Dist. LEXIS 71996, at *2–4 (S.D.N.Y. June 25, 2010) (collecting cases). Even cases implicating data far more sensitive have been found wanting at the district court level. *In re U.S. Office of Pers. Mgmt. Data Sec. Breach Litig.*, 266 F. Supp. 3d 1, 19 (D.D.C. 2017) (finding that the factual allegations in the complaints

were insufficient to establish standing), *reversed in part*, 928 F.3d 42 (D.C. Cir. June 21, 2019) (holding that Plaintiffs had standing). As another court observed in finally approving a settlement with similar class relief, "[d]ata breach litigation is evolving; there is no guarantee of the ultimate result . . . [they] are particularly risky, expensive, and complex"). *Fox v. Iowa Health Sys.*, 2021 WL 826741, at *5 (W.D. Wis. Mar. 4, 2021).

To the extent the law has gradually accepted this relatively new type of litigation, the path to a class-wide monetary judgment remains unforged, particularly in the area of damages. Thus, given this risk and uncertainty, settlement is the more prudent course when a reasonable one can be reached. The damages methodologies, while theoretically sound in Plaintiffs' view, remain untested in a disputed class certification setting and unproven in front of a jury. And, as in any data breach case, establishing causation on a class-wide basis is rife with uncertainty. *See, e.g.*, *In re Hannaford Bros. Co. Cust. Data Sec. Breach Litig.*, 293 F.R.D. 21 (D. Me. 2013).

In light of the above, the $3,250,000 Settlement Fund achieved for the Settlement Class is an outstanding result. (Federman Decl., ¶ 6). The Settlement approximates a payment of $9.29 per Settlement Class Member—which exceeds other data breach Settlements approved in the Sixth Circuit. *See Thomsen v. Morley Companies, Inc.*, 639 F. Supp. 3d 758 (E.D. Mich. 2022) (approximately $6.19 per class member); *Jackson v. Nationwide Ret. Sols., Inc.*, No. 2:22-CV-3499, 2024 WL 958726, at *1 (S.D. Ohio Mar. 5, 2024) (providing two years of credit monitoring services to class members). As well as those regularly approved elsewhere. *See In re The Home Depot, Customer Data Sec. Breach Litig.*, No. 1:14-MD-2583 (N.D. Ga. Mar. 7, 2016) (approximately $0.51 per class member); *In re Target Customer Data Sec. Breach Litig.*, No. MDL 14-2522 (D. Minn. Mar. 18, 2015) ($0.17 per class member). The foregoing cases underscore Plaintiffs' exemplary resolution for the Settlement Class.

Based on Class Counsel's experience in similar cases and the benefits under the Settlement,

the Settlement provides ample compensation for Settlement Class Member's legitimate individual claims and for class-wide claims in the aggregate. (*See* Federman Decl., ¶ 10).

### 5.  The Reaction of Absent Settlement Class Members

This cannot be discerned at this time because notice has not yet been disseminated to the Class.

### 6.  The Settlement is in the Public's Interest

Finally, "there is a strong public interest in encouraging settlement of complex litigation and class action suits because they are notoriously different and unpredictable and settlement conserves judicial resources." *In re Cardizem CD Antitrust Litig.*, 218 F.R.D. 508, 530 (E.D. Mich. 2003). The settlement of a class action affecting approximately 350,000 people is consistent with the public interest, as it conserves judicial resources and ensures uniformity. The Settlement thus falls within the range of final approval under each of the Sixth Circuit's factors, and notice should be issued to the Class.

## V.    NOTICE PROGRAM

"For any class certified under Rule 23(b)(3), the court must direct to class members the best notice practicable under the circumstances…who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). "The court must direct notice in a reasonable manner to all class members who would be bound by a proposed settlement, voluntary dismissal, or compromise." *Id.* at 23(e)(1). Notice is "adequate if it may be understood by the average class member." Newberg, § 11:53 at 167.

Progressive will provide the Settlement Administrator with a list of names and physical addresses used by Progressive to provide notice of the Security Incident in August 2023 to potentially impacted customers. (SA, ¶ 53). The Settlement Administrator will then mail the Postcard Notice to members of the Class. (*Id.* ¶ 54). The Postcard Notice sent to Class Members

will inform Class Members of their "opt-out" and objection rights as well as the benefits available to them under the Settlement. (*Id.* at Ex. C). Additionally, the Settlement Administrator will establish a website where Class Members can view and access the Notices, Claim Form, Settlement Agreement, and other pertinent information about the Settlement. (*Id.* ¶ 57).

The proposed notice documents and Claim Form are plain and easily understood. The documents describe the claims, the relief provided under the Settlement, and Settlement Class Members' rights and options, including the deadlines and means of submitting a Claim Form, opting out, objecting, and/or appearing at the Final Approval Hearing. (*Id.* at Exs. A–C). The notice materials also provide information regarding attorney's fees and Service Award Payments. Plaintiffs submit that the notice program is reasonable and provides the best notice practicable under the circumstances.

## VI.  CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court enter the proposed order granting preliminary approval and authorizing dissemination of notice to the Class.

Date: September 13, 2024

Respectfully submitted,

*/s/: William B. Federman*
William B. Federman (pro hac vice)
**FEDERMAN & SHERWOOD**
10205 N. Pennsylvania Ave.
Oklahoma City, OK 73120
Telephone: (405) 235-1560
*wbf@federmanlaw.com*

Gary M. Klinger (pro hac vice)
**MILBERG COLEMAN BRYSON
PHILLIPS GROSSMAN LLC**
227 W. Monroe Street, Suite 2100
Chicago, IL 60606
Phone: (866) 252-0878
*gklinger@milberg.com*

*Interim Co-Lead Class Counsel for*
*Plaintiffs and the Putative Class*

Brian D. Flick, Esq (OH 0081605)
DannLaw
15000 Madison Avenue
Lakewood, OH 44107
(513) 645-3488
(216) 373-0536 facsimile
*notices@dannlaw.com*

*Interim Liaison Class Counsel for*
*Plaintiffs and the Class*

## CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 7.1(f)

I certify that this case has been assigned to the complex case track. I further certify that the page limitation for this Memorandum is thirty (30) pages because it is a dispositive motion, and this Memorandum does not exceed this page limitation.

*/s/:William B. Federman*
William B. Federman

## CERTIFICATE OF SERVICE

I hereby certify that on September 13, 2024, a true and correct copy of the foregoing was electronically filed with the Clerk of Court using CM/ECF. Copies of the foregoing document will be served upon interested counsel via transmission of Notices of Electronic Filing generated by CM/ECF.

*/s/: William B. Federman*
William B. Federman