THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO

| | |
|---|---|
| **KENNETH OKONSKI**, *et al.*, individually and on behalf of all others similarly situated**,**<br><br>Plaintiffs,<br><br>v.<br><br>**PROGRESSIVE CASUALTY INSURANCE COMPANY,**<br><br>Defendant. | Case No.: 1:23-cv-01548<br><br>Judge Patricia A. Gaughan |

**DECLARATION OF WILLIAM B. FEDERMAN
IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION
FOR PRELMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

I, **William B. Federman**, declare under penalty of perjury as follows:

    1.    I am an attorney duly admitted to the bars of the states of Texas, Oklahoma, and New York. I am a founder and managing member of the law firm Federman & Sherwood and am one of the proposed Settlement Class Counsel for Plaintiffs and the Settlement Class ("Class Counsel")[1] in the above referenced action (the "Action"). I submit this declaration in support of Plaintiffs' Unopposed Motion for Preliminary Approval of Class Action Settlement and Memorandum of Law in Support, filed contemporaneously herewith.

    2.    Plaintiffs Kenneth Okonski, Bradley Okonski, Edward Reis, Tosif Khan, Kulsoom Tosif, Eduardo Barbosa, Rebecca Johnson, Stephen Johnson, Roxanne Trigg, Dodi Waden, and

---

[1] "Class Counsel" collectively refers to William B. Federman of Federman & Sherwood and Gary M. Klinger of Milberg Coleman Bryson Phillips Grossman LLC.

1

Giovanni Madaffari (collectively, "Plaintiffs"), individually and on behalf of the putative class, and Defendant Progressive Casualty Insurance Company ("Defendant" or "Progressive") have reached an agreement to settle this Action pursuant to the terms of the Settlement Agreement, attached hereto as **Exhibit 1**.[2]

3. On May 19, 2023, Progressive received written notification from one of its third-party call centers regarding a data security incident involving some of the call center's representatives. (Compl. ¶ 41). Plaintiffs allege the call center's employees improperly shared their Progressive access credentials with unauthorized individuals, who were then able to access their PII. (*Id.* ¶ 42). "[T]he earliest date of employment for any of the potentially involved employees by the third-party service provider was May 2021, but most were hired during or after the fall of 2022." (*Id.* ¶ 45). The PII potentially accessed without authorization included the PII of Plaintiffs and the Class, including their first and last names, dates of birth, driver's license numbers, email addresses, phone numbers, financial account numbers, routing numbers, financial institution names, credit/debit card numbers, expiration dates, and Social Security numbers. (*Id.* ¶ 47). Progressive notified Plaintiffs and the Class of the Data Incident in or around August 2023. (*Id.* ¶ 49).

4. After receiving notice of the Data Incident, Plaintiffs filed separate complaints in August 2023, and on August 25, 2023, filed their motion to consolidate the cases in this Court (*see* ECF Nos. 4, 5, 6), which was granted on September 22, 2023 (ECF No. 13). The Parties exchanged initial disclosures on November 20, 2023, and on the same day Plaintiffs filed their Consolidated Class Action Complaint (ECF No. 27) alleging the following claims for relief: (i) negligence; (ii)

---

[2] All capitalized terms not otherwise defined herein shall have the meanings set forth in the Settlement Agreement.

unjust enrichment; (iii) breach of implied contract; (iv) declaratory judgment; (v) negligent training, hiring, and supervision; (vi) violations of California's Consumer Privacy Act; (vii) violations of the California Consumer Records Act;  (viii) violations of the California Unfair Competition Law; (ix) violation of the Florida Deceptive and Unfair Trade Practices Act; (x) violations of the Illinois Consumer Fraud Act; (xi) breach of fiduciary duty; and (xii) intrusion upon seclusion. In response, Progressive filed a Motion to Dismiss (ECF No. 31), which Plaintiffs opposed. (ECF No. 33). Shortly after the Motion to Dismiss was fully briefed, the Parties engaged in informal discovery and explored the viability of early resolution.

5. The proposed Settlement was agreed to following extensive arm's-length negotiations, in good faith and without collusion, by capable and experienced counsel, with full knowledge of the facts, the law, and the inherent risks in the Litigation, and with the active involvement of the Parties. On May 14, 2024, the Parties engaged in a full day mediation session with the Hon. Wayne R. Andersen (Ret.) of JAMS. After an all-day mediation session filled with hard bargaining on both sides, Judge Andersen submitted a mediator's proposal that the Parties ultimately accepted. The acceptance of the Mediator's proposal resulted in an agreement to settle this matter in principle. In the weeks that followed, the Parties negotiated the finer points of the Settlement Agreement and exchanged multiple emails, culminating in the Settlement Agreement. The terms of the mediator's proposal (and additional reasonable terms agreed to by the Parties) are memorialized in the Settlement Agreement, which was negotiated at arm's-length, in good faith and without collusion, by capable and experienced counsel, with full knowledge of the facts, the law, and the inherent risks in the Litigation, and with the active involvement of the Parties. The Parties did not discuss the amount of Attorneys' Fees and Expenses Award and/or Service Awards to Plaintiffs, until after the substantive terms of the Settlement had been agreed upon.

6. The Settlement provides substantial benefits to the Settlement Class, including significant monetary benefits and extensive identity theft protection and credit monitoring. Notably, the Settlement provides a non-reversionary cash settlement fund of $3,250,000 to the approximately 350,000 Settlement Class Members—approximately $9.29 per Settlement Class Member.

7. Before settlement negotiations, and as alluded to above, Class Counsel sought and obtained informal and formal discovery from Progressive on a number of topics, including: the number of individuals whose personally identifiable information ("PII") was compromised during the Data Incident; the types of PII potentially compromised; the mechanics of the Data Incident; the remedial actions Progressive and the third-party call center took after the Data Incident; and the terms of any potentially applicable insurance coverage. Indeed, the Settlement was achieved only after: a thorough investigation that culminated in the preparation of a detailed amended complaint and response to Progressive's motion to dismiss; the consideration of relevant informal discovery; the preparation of a detailed mediation statement; and intense settlement negotiations. Class Counsel thoroughly evaluated this in their analysis of damages.

8. By the time the Settlement in principle was reached, Plaintiff and Class Counsel were well informed of the strengths and weaknesses of the case. Class Counsel diligently investigated and prosecuted this case by dedicating substantial resources to it and successfully negotiating this Settlement

9. After the Settlement was reached, Class Counsel undertook a competitive bidding process to achieve an excellent Settlement Administrator for the Class—Kroll. This included soliciting cost proposals from different settlement administrators. Kroll is a well-known firm with a history of successfully administering many class action settlements, including other data breach

settlements. The Parties selected Kroll after considering bids from multiple administration firms and believe that Kroll will be able to meet the obligations imposed on the Settlement Administrator under the settlement for a reasonable cost.

10. It is Class Counsel's opinion that the Settlement is fair, reasonable, and adequate considering the significant benefits to the Settlement Class as well as the risks and delays attendant to further protracted litigation.  This view is informed by proposed Class Counsel's decades of work litigating complex actions.  Class Counsel have extensive experience in successfully litigating data breach class actions. *See* **Exhibit 2** (resumé of Federman & Sherwood); *see also* **Exhibit 3** (resumé of Milberg Coleman Bryson Phillips Grossman LLC).

11. Class Counsel represent that there are no agreements related to the settlement other than those reflected in the Settlement Agreement itself and an agreement with Kroll to perform notice and settlement administration services if this Motion is granted by the Court.

12. The Settlement Class Representatives have also demonstrated their adequacy by: (i) selecting well-qualified Class Counsel; (ii) producing information and documents to Class Counsel to permit investigation and development of the complaints; (iii) being available as needed throughout the litigation; and (iv) monitoring the Litigation. Plaintiffs do not have any interests antagonistic to other class members.

13. It is my opinion that the proposed class action settlement is fair, reasonable, and adequate and is an outstanding result for the Settlement Class Members.

I declare under penalty of perjury that the foregoing is true and correct.

Date: September 13, 2024                                     Respectfully submitted,

*/s/: William B. Federman*
William B. Federman (pro hac vice)
**FEDERMAN & SHERWOOD**
10205 N. Pennsylvania Ave.
Oklahoma City, OK 73120
Telephone: (405) 235-1560
*wbf@federmanlaw.com*

## CERTIFICATE OF SERVICE

I hereby certify that on September 13, 2024, a true and correct copy of the foregoing was electronically filed with the Clerk of Court using CM/ECF. Copies of the foregoing document will be served upon interested counsel via transmission of Notices of Electronic Filing generated by CM/ECF.

*/s/: William B. Federman*
William B. Federman