**THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | |
|---|---|
| **KENNETH OKONSKI**, *et al.*, individually and on behalf of all others similarly situated**,** | Case No.: 1:23-cv-01548 |
| Plaintiffs, | |
| v. | Judge Patricia A. Gaughan |
| **PROGRESSIVE CASUALTY INSURANCE COMPANY,** | |
| Defendant. | |

---

**PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES**
**IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION FOR FINAL**
**APPROVAL OF CLASS ACTION SETTLEMENT**

---

## <u>STATEMENT OF THE ISSUES TO BE DECIDED</u>

1.      Should the Court grant final certification of the Settlement Class for settlement purposes pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3)?

      **Plaintiff's Answer: Yes.**

2.      Did the notice disseminated to the Settlement Class satisfy the requirements of Due Process and Federal Rule of Civil Procedure 23, when direct notice—detailing the terms of the Settlement Agreement and individual options for objecting, opting out, or receiving payment—was transmitted via postcard and reached approximately 98.44% of the Class?

      **Plaintiff's Answer: Yes.**

3.      Should the Court grant final approval of the Settlement, finding it fair, reasonable, and adequate, when it delivers meaningful monetary relief to the Settlement Class?

      **Plaintiff's Answer: Yes.**

## SUMMARY OF THE ARGUMENT

Plaintiffs Kenneth Okonski, Bradley Okonski, Edward Reis, Tosif Khan, Kulsoom Tosif, Eduardo Barbosa, Rebecca Johnson, Stephen Johnson, Roxanne Trigg, Giovanni Madaffari, and Dodie Waden (collectively, "Plaintiffs"), on behalf of themselves and on behalf of all others similarly situated, request final approval of a proposed class action settlement with Defendant Progressive Casualty Insurance Company ("Defendant" or "Progressive") that provides a non-reversionary settlement fund of $3,250,000.00 to Settlement Class Members whose personally identifiable information ("PII") was potentially accessed in a data security incident involving one of Progressive's third-party call centers. Plaintiffs aver the settlement is fair, adequate, and reasonable and respectfully request an Order: (i) granting final approval of the proposed Class Action Settlement; (ii) certifying a class for the purposes of Settlement; (iii) confirming the appointment of Plaintiffs as Class Representatives; (iv) confirming the appointment of William B. Federman of Federman & Sherwood and Gary M. Klinger of Milberg Coleman Bryson Phillips Grossman LLC as Class Counsel; (v) finding that the Parties' form and method of giving notice of the pendency of this action and the Settlement to the Settlement Class comported with Due Process; and (vi) granting such other relief and further relief as the Court deems just and proper.

**TABLE OF CONTENTS**

I.     INTRODUCTION ............................................................................................... 1

II.    FACTUAL AND PROCEDURAL BACKGROUND........................................ 2

III.   SUMMARY OF THE SETTLEMENT .......................................................... 2

   A.   SETTLEMENT BENEFITS........................................................................... 2

   B.   ATTORNEYS' FEES, EXPENSES, AND SERVICE AWARDS. ....................... 4

IV.    CERTIFICATION OF THE SETTLEMENT CLASS ...................................... 4

V.     THE SETTLEMENT WARRANTS FINAL APPROVAL................................ 4

   A. THE SETTLEMENT SATISFIES THE FEDERAL RULE OF CIVIL PROCEDURE 23(E)(2)–(3) FACTORS.

       ....................................................................................................................... 5

       1.   Fed. R. Civ. P. 23(e)(2)(A): The Class Was Adequately Represented. .......................... 5

       2.   Fed. R. Civ. P. 23(e)(2)(B): The Settlement was Negotiated at Arm's Length. ............. 6

       3.   The Relief is Adequate Under Rule 23(e)(2)(C) and Rule 23(e)(2)(D)........................ 7

          i.    Rule 23(e)(2)(C)(i): The Costs, Risk, and Delay of Trial and Appeal. .................... 7

          ii.   Rule 23(e)(2)(C)(ii) and Rule 23(e)(2)(D): The Method of Distributing Relief Will be

                Equitable and Effective.............................................................................. 9

       4.   Rule 23(e)(3): Other Agreements. ............................................................... 10

   B.   THE SIXTH CIRCUIT'S UAW FACTORS WEIGH IN FAVOR OF FINAL APPROVAL...... 10

       1. The Settlement Agreement is the Result of Informed, Non-Collusive, Arm's Length

          Negotiations Between the Parties. .................................................................. 10

       2. The Complexity, Expense, and Likely Duration of the Litigation Favors Approval of the

          Settlement. ............................................................................................ 11

       3.   The Parties Engaged in Sufficient Fact-Finding....................................... 12

4. The Settlement Provides Favorable Relief when Weighed Against the Likelihood of Success on the Merits.................................................................................. 13

5.   The Opinions of Class Counsel and the Class Representatives. ................................... 15

6.   The Reaction of Absent Settlement Class Members..................................................... 15

7.   The Settlement is in the Public's Interest. ................................................................... 16

VI.     NOTICE SATISFIED DUE PROCESS AND RULE 23 ................................................. 17

VII.    CONCLUSION................................................................................................................ 19

## **TABLE OF AUTHORITIES**

### **Cases**

*Barnes v. Winking Lizard, Inc.*,

    No. 1:18CV952, 2019 WL 1614822 (N.D. Ohio Mar. 26, 2019)........................................... 12

*Bert v. AK Steel Corp.*,

    2008 WL 4693747 (S.D. Ohio Oct. 23, 2008)......................................................................... 10

*Carr v. Guardian Healthcare Holdings, Inc.*,

    No. 2:20-CV-6292, 2022 WL 501206 (S.D. Ohio Jan. 19, 2022)................................... passim

*Chambers v. Cont'l Secret Serv. Bureau, Inc.*,

    No. 3:22-CV-468, 2024 WL 4363161 (N.D. Ohio Sept. 30, 2024)......................................... 8

*Fox v. Iowa Health Sys.*,

    No. 3:18-CV-00327-JDP, 2021 WL 826741 (W.D. Wis. Mar. 4, 2021)................................... 8

*Fulton-Green v. Accolade, Inc.*,

    No. 18-274, 2019 WL 4677954 (E.D. Pa. Sept. 24, 2019)....................................................... 8

*Gascho v. Glob. Fitness Holdings, LLC*,

    822 F.3d 269 (6th Cir. 2016).................................................................................................. 19

*Gaston v. FabFitFun, Inc.*,

    2021 WL 6496734 (C.D. Cal. Dec. 9, 2021) .......................................................................... 8

*Hainey v. Parrot*,

    617 F. Supp. 2d 668 (S.D. Ohio 2007) ................................................................................... 7

*Halliday v. Weltman, Weinber & Reis Co., L.P.A.*,

    2013 WL 692856 (E.D. Mich. Feb. 26, 2013) ....................................................................... 4

*Harsh v. Kalida Mfg., Inc.*,

No. 3:18-CV-2239, 2021 WL 4145720 (N.D. Ohio Sept. 13, 2021)...................................... 16

*In re Blackbaud, Inc., Customer Data Breach Litig.*,

No. 3:20-MN-02972-JFA, 2024 WL 2155221 (D.S.C. May 14, 2024) .................................. 14

*In re Cardizem CD Antitrust Litig.*,

218 F.R.D. 508 (E.D. Mich. 2003) ................................................................................. 15, 16

*In re Countrywide Fin. Corp. Customer Data Sec. Breach Litig.*,

No. 3:08-MD-01998, 2010 WL 3341200 (W.D. Ky. Aug. 23, 2010) ..................................... 14

*In re Delphi Corp. Sec., Derivative & "ERISA" Litig.*,

248 F.R.D. 483 (E.D. Mich. 2008) ......................................................................................... 11

*In re Hannaford Bros. Co. Cust. Data Sec. Breach Litig.*,

293 F.R.D. 21 (D. Me. 2013).................................................................................................. 14

*In re Inter-Op Hip Prosthesis Liab. Litig.*,

204 F.R.D. 330 (N.D. Ohio 2001) ............................................................................................ 7

*In re Lansing Cmty. Coll. Data Breach Litig.*,

No. 1:23-CV-00738-PLM (W.D. Mich. Jan. 23, 2025)........................................................... 14

*In re Sonic Corp. Customer Data Sec. Breach Litig.*,

No. 1:17-md-2807, 2019 WL 3773737 (N.D. Ohio Aug. 12, 2019) ......................................... 7

*In re Telectronics Pacing Sys., Inc.*,

137 F. Supp. 2d 985 (S.D. Ohio 2001) .................................................................................... 8

*In re Wright & Filippis, LLC Data Sec. Breach Litig.*,

No. 2:22-CV-12908-SFC, 2024 WL 3083436 (E.D. Mich. June 20, 2024)............................. 14

*Int'l Union, United Auto., Aerospace & Agr. Implement Workers of Am. v. Gen. Motors Corp.*,

497 F.3d 615 (6th Cir. 2007) ................................................................................................. 13

*Int'l Union, United Auto., Aerospace, & Agr. Implement Workers of Am. v. Gen. Motors Corp.*,

   No. 07-CV-14074-DT, 2008 WL 2968408 (E.D. Mich. July 31, 2008) ................................ 13

*Johnson v. Midwest Logistics Systems, Ltd.*,

   No. 2:11-CV-1061, 2013 WL 2295880 (S.D. Ohio May 24, 2013)........................................ 10

*Kritzer v. Safelite Solutions, LLC*,

   2012 WL 1945144 (S.D. Ohio May 30, 2012). ............................................................... 12, 13

*Leonhardt v. ArvinMeritor, Inc.*,

   581 F. Supp. 2d 818 (E.D. Mich. 2008)................................................................................... 4

*Lucyk v. Materion Brush Inc.*,

   No. 3:20-CV-2340, 2023 WL 4405280 (N.D. Ohio July 7, 2023)........................................... 8

*McKnight v. Erico Int'l Corp.*,

   655 F. Supp. 3d 645 (N.D. Ohio 2023)............................................................................... 7, 18

*Mullane v. Central Hanover Bank & Trust Co.*,

   339 U.S. 306 (1950)............................................................................................................... 17

*Mullins v. S. Ohio Pizza, Inc.*,

   No. 1:17-CV-426, 2019 WL 275711 (S.D. Ohio Jan. 18, 2019)........................................... 12

*Olden v. Gardner*,

   294 F. App'x 210, 217 (6th Cir. 2008) .................................................................................. 15

*Phillips Petroleum Co. v. Shutts*,

   472 U.S. 797 (1985)............................................................................................................... 17

*Satterly v. Airstream, Inc.*,

   No. 3:19-CV-107, 2020 WL 6536342 (S.D. Ohio Sept. 25, 2020) ........................................ 16

*Shy v. Navistar Int'l Corp.*,

viii

No. 3:92-CV-00333, 2022 WL 2125574 (S.D. Ohio June 13, 2022) ................................ 15, 16

*Thomsen v. Morley Companies, Inc.*,

No. 1:22-CV-10271, 2023 WL 3437802 (E.D. Mich. May 12, 2023) .................................... 14

*Tucker v. Marietta Area Health Care Inc. d/b/a Memorial Health Sys.*,

No. 2:22-cv-00184 (S.D. Ohio Dec. 7, 2023) ......................................................... 15

*UAW v. Gen. Motors Corp.*,

2006 WL 891151 (E.D. Mich. Mar. 31, 2006) ......................................................... 12

*UAW v. Gen. Motors Corp.*,

497 F.3d 615 (6th Cir. 2007) ................................................................. 4, 5

*Williams v. Vukovich*,

720 F.2d 909 (6th Cir. 1983) ............................................................... 4, 15

## Rules

Fed. R. Civ. P. 23 ........................................................................ passim

## I.  INTRODUCTION

On September 19, 2024, the Court granted preliminary approval of the Settlement between Plaintiffs and Defendant, and ordered that notice be given to the Class. (ECF No. 45).[1] The Settlement establishes a non-reversionary Settlement Fund of $3,250,000.00 from which substantial and immediate benefits will be provided to the Settlement Class consisting of approximately 350,000 Class Members. This is an outstanding result for Plaintiffs and the Settlement Class that merits final approval.

The Settlement makes the following monetary relief available to all Settlement Class Members: (i) reimbursement of up to $5,000.00 for Documented Losses; or (ii) a Cash Award (a *pro rata* cash payment from the Net Settlement Fund). (SA, ¶¶ 28, 30). In addition, all Settlement Class Members may enroll in three (3) years of Credit Monitoring and Insurance Services. (*Id.* ¶ 29).

The Parties reached this Settlement—providing meaningful benefits for the Settlement Class—after extensive investigation, hard-fought litigation, and arm's-length negotiations. Although Plaintiffs and Class Counsel believe in the merits of the claims asserted, Defendant denies each and every claim alleged against it in the Litigation, including all allegations of wrongdoing or liability. The claims involve the intricacies of data security litigation (a fast-developing area in the law), and Plaintiffs would face risks at each stage of litigation. Against these risks, Class Counsel and Plaintiffs believe that the Settlement achieved is for the benefit of the Settlement Class.

After this Court granted preliminary approval, the Settlement Administrator—with the

---

[1] Unless otherwise stated, all capitalized terms shall have the definitions set forth in the Settlement Agreement (ECF No. 44-1). Citations to the Settlement Agreement will be abbreviated as "SA, ¶ ___."

1

help of the Parties—disseminated notice to the Settlement Class. Direct notice was provided to the Settlement Class Members via Postcard Notice and successfully reached 98.44% of the Class. *See* Declaration of  Kroll Settlement Administration ("Kroll Decl."), ¶ 13 (attached hereto as **Exhibit 1**). Out of the approximately 350,000 Settlement Class Members, only three (3) Class Members sought to be excluded from the Settlement, and absolutely ***no*** Class Members objected to the Settlement. (*Id.* ¶¶ 18–19).

Plaintiffs now move the Court for final approval of the Settlement. The Settlement meets all the criteria for final approval; therefore, Plaintiffs' Motion should be granted.

## II.      FACTUAL AND PROCEDURAL BACKGROUND.

In the interest of judicial efficiency, for the factual and procedural background of this case, Plaintiffs respectfully refer this Court to, and hereby incorporate by reference, Plaintiffs' Memorandum of Law in Support of Plaintiffs' Unopposed Motion for Preliminary Approval (ECF No. 43) and Plaintiffs' Memorandum in Support of Plaintiffs' Motion for Attorneys' Fees, Expenses, and Class Representative Service Awards (ECF No. 47).

## III.      SUMMARY OF THE SETTLEMENT

Under the Settlement, Defendant agrees to establish a non-reversionary Settlement Fund of $3,250,000.00, from which numerous benefits to the Settlement Class will be provided. (SA, ¶¶ 17, 20, 28–30). The Settlement Fund will be used by the Settlement Administrator to pay for: (i) reasonable Notice and Claims Administration Costs; (ii) any taxes owed by the Settlement Fund; (iii) any Service Awards approved by the Court; (iv) any Attorneys' Fees, Costs, and Expenses Award approved by the Court; and (v) any payments made or other benefits provided to Settlement Class Members, pursuant to the terms and conditions of this Settlement Agreement. (*Id.* ¶ 21).

### A.  Settlement Benefits.

The Settlement Class consists of approximately 350,000 members. Pursuant to the

Settlement Agreement, Settlement Class Members have the opportunity to submit a Claim for the following Settlement benefits:

Cash Award: Settlement Class Members who submit a valid and timely Claim Form may elect to receive a pro rata cash payment from the Net Settlement Fund. (*Id.* ¶¶ 28(a), 30(a–b)).[2]

Documented Loss Payment: In the event a Settlement Class Member does not elect a Cash Award, the Settlement Class Member may submit a claim for a Settlement Payment of up to $5,000.00 for reimbursement in the form of a Documented Loss Payment. (*Id.* ¶ 28(b)). To receive a Documented Loss Payment, a Settlement Class Member must make this election on the Claim Form and submit to the Settlement Administrator the following: (i) a valid Claim Form electing to receive the Documented Loss Payment benefit; (ii) an attestation regarding any actual and unreimbursed Documented Loss; and (iii) Reasonable Documentation that demonstrates the Documented Loss to be reimbursed pursuant to the terms of the Settlement. (*Id.*).

Credit Monitoring and Insurance Services: Each Settlement Class Member who submits a valid and timely Claim Form may elect to receive three (3) years of Credit Monitoring and Insurance Services ("CMIS") regardless of whether they also make a claim for a Cash Award or Documented Loss Payment. (*Id.* ¶ 29). The CMIS will include up to $1 million of identity theft insurance coverage and three bureau credit monitoring. (*Id.*).

---

[2] The Settlement Administrator will first pay for CMIS claimed by a Settlement Class Member who submits a valid and timely Claim Form. The cost of CMIS validly claimed will be paid from the Settlement Fund. The Settlement Administrator will next use the Settlement Fund to pay all valid Documented Loss Payments. The amount remaining after all Documented Loss Payments are applied and the payments for the CMIS are made shall be referred to as the "Net Settlement Fund. The Settlement Administrator shall utilize the Net Settlement Fund to make all Cash Award payments pursuant to Paragraph 28(a). The amount of each Cash Award payment shall be calculated by dividing the Net Settlement Fund by the total number of valid and timely Claim Forms submitted by Settlement Class Members who elected a Cash Award. (SA, ¶¶ 30(a–b)).

**B.  Attorneys' Fees, Expenses, and Service Awards.**

Class Counsel moved the Court for an award for their reasonable attorneys' fees in the amount of thirty-three percent (33.00%) of the Settlement Fund ($1,072,500.00), and reimbursement of documented costs and expenses in the amount of $22,879.21, to be paid from the Settlement Fund. (ECF Nos. 46, 47). Class Counsel also moved the Court for Service Awards to the Class Representatives in the amount of $2,000.00 each for the time they have committed for the benefit of the Settlement Class. (*Id.*).

**IV.    CERTIFICATION OF THE SETTLEMENT CLASS**

In the Preliminary Approval Order, the Court preliminarily certified the Settlement Class, finding that the Class satisfied all of Federal Rule of Civil Procedure ("Rule") 23's requirements. (ECF No. 45). Nothing has changed since that finding that could conceivably undermine class certification. Accordingly, Plaintiffs respectfully request that the Court finally certify the Settlement Class for settlement purposes.

**V.    THE SETTLEMENT WARRANTS FINAL APPROVAL**

The Federal Rules of Civil Procedure require judicial approval of class action settlements. *Halliday v. Weltman, Weinber & Reis Co., L.P.A.*, 2013 WL 692856, at *1 (E.D. Mich. Feb. 26, 2013) (citing Fed. R. Civ. P. 23(e)). At final approval, the ultimate issue is whether the settlement is fair, reasonable, and adequate. Fed. R. Civ. P. 23(e)(2); *Williams v. Vukovich*, 720 F.2d 909, 921 (6th Cir. 1983). Courts within the Sixth Circuit recognize a strong "federal policy favoring settlement of class actions." *UAW v. Gen. Motors Corp.*, 497 F.3d 615, 632 (6th Cir. 2007) (citation omitted); *see also Leonhardt v. ArvinMeritor, Inc.*, 581 F. Supp. 2d 818, 830 (E.D. Mich. 2008).

Rule 23(e)(2) provides factors for the Court to determine if a settlement is "fair, reasonable, and adequate." The Rule 23(e)(2) factors are: (A) the class representatives

4

and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed attorney's fee, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(2); and (D) the proposal treats class members equitably relative to each other. Fed. R. Civ. P. 23(e)(2).

In addition to these factors, the Sixth Circuit has laid out its own factors to consider. *See UAW*, 497 F.3d at 631. They are: "(1) the risk of fraud or collusion; (2) the complexity, expense and likely duration of the litigation; (3) the amount of discovery engaged in by the parties; (4) the likelihood of success on the merits; (5) the opinions of class counsel and class representatives; (6) the reaction of absent class members; and (7) the public interest" (the "*UAW* factors"). *Id.* As described below, each factor affirms the fairness, reasonableness, and adequacy of the Settlement, and supports final approval.

### A. The Settlement Satisfies the Federal Rule of Civil Procedure 23(e)(2)–(3) Factors.

#### 1. Fed. R. Civ. P. 23(e)(2)(A): The Class Was Adequately Represented.

"The first fairness factor under Rule 23(e)(2) requires a court to consider whether "the class representatives and class counsel have adequately represented the class." Fed. R. Civ. P. 23(e)(2)(A). As previously determined by this Court, the Class Representatives and Class Counsel have performed adequately. (ECF No. 45).

The Class Representatives pursued this litigation on behalf of the Class for the benefit of the Class. The Class Representatives demonstrated their adequacy by: (i) selecting well-qualified Class Counsel; (ii) producing information and documents to Class Counsel to permit

investigation and development of the complaints; (iii) being available as needed throughout the litigation; and (iv) monitoring the Litigation. (Declaration of William B. Federman in Support of Plaintiffs' Unopposed Motion for Preliminary Approval of Class Action Settlement ("Federman Decl."), ¶ 12, ECF No. 44). Additionally, the Class Representatives were also willing to face invasive discovery and depositions if necessary. Their claims and interests align with those of the Settlement Class, and they approve of the Settlement. Therefore, the Class Representatives have performed adequately.

Similarly, Class Counsel are adequate representatives. Class Counsel have extensive experience litigating complex class actions and has demonstrated ample success in litigating data security class actions. (*See* ECF Nos. 44-2, 44-3). Class Counsel have adequately represented the Class by: (i) fully investigating the facts and legal claims; (ii) preparing the complaints; (iii) responding in opposition to Defendant's Motion to Dismiss; (iv) requesting, obtaining, and reviewing numerous documents from Progressive regarding the Data Incident, affected Class Members, its remediation efforts and insurance coverage; (v) drafting a comprehensive mediation statement assessing the legal and factual strengths and weaknesses of the case; and (vi) participating in mediation and a lengthy negotiation process. (Federman Decl., ¶¶ 4–5). The extensive work done by Class Counsel to date provided Class Counsel with sufficient information to negotiate this very favorable Settlement for the Class. (*Id*. ¶ 10). Thus, Class Counsel were also adequate representatives, and this factor weighs in favor of final approval.

### 2. Fed. R. Civ. P. 23(e)(2)(B): The Settlement was Negotiated at Arm's Length.

Pursuant to Rule 23(e)(2)(B), the Parties must also demonstrate the Settlement was negotiated at arm's length. Here, the Settlement was negotiated at arm's length, without collusion, and with the assistance of a highly qualified and respected mediator, Hon. Wayne R. Andersen (Ret.).

(Federman Decl., ¶ 5). As part of the mediation process, the Parties provided the mediator with detailed mediation statements outlining the strengths and weaknesses of their claims and defenses and exchanged informal discovery. (*Id.*). The fact that the Settlement was achieved through well-informed, and arm's-length neutrally supervised negotiations weighs in favor of granting final approval under Rule 23(e)(2)(B). *See McKnight v. Erico Int'l Corp.*, 655 F. Supp. 3d 645, 662 (N.D. Ohio 2023) (finding the settlement was negotiated at arm's length where there was no evidence of collusion, the parties exchanged discovery, and the settlement was reached through a neutral mediator); *In re Inter-Op Hip Prosthesis Liab. Litig.*, 204 F.R.D. 330, 351 (N.D. Ohio 2001) ("[W]hen a settlement is the result of extensive negotiations by experienced counsel, the Court should presume it is fair."); *Hainey v. Parrot*, 617 F. Supp. 2d 668, 673 (S.D. Ohio 2007) ("[T]he participation of an independent mediator in the settlement negotiations virtually assures that the negotiations were conducted at arm's length and without collusion between the parties.").

### 3. The Relief is Adequate Under Rule 23(e)(2)(C) and Rule 23(e)(2)(D).

#### i. *Rule 23(e)(2)(C)(i): The Costs, Risk, and Delay of Trial and Appeal.*

As previously outlined in Plaintiffs' Unopposed Motion for Preliminary Approval (ECF No. 43) and Plaintiffs' Motion for Attorneys' Fees, Costs, Expenses, and Service Awards (ECF No. 47) Plaintiffs and the Class would have faced significant risks and costs if they had continued to litigate the case. *See, e.g.*, *In re Sonic Corp. Customer Data Sec. Breach Litig.*, No. 1:17-md-2807, 2019 WL 3773737, at *7 (N.D. Ohio Aug. 12, 2019) ("Data breach litigation is complex and risky. This unsettled area of law often presents novel questions for courts. And of course, juries are always unpredictable."). First, there was a risk that Plaintiffs' claims would not have survived, in part or full, on a class-wide basis after the Court's ruling on the pending motion to dismiss, or on future motions for class certification, summary judgment, *Daubert* motions on damages methodologies, or other motions. *See Fulton-Green v. Accolade, Inc.*, No. 18-274, 2019

WL 4677954, at *8 (E.D. Pa. Sept. 24, 2019) (noting data breaches are a "risky field of litigation" because they "are uncertain and class certification is rare."); *Fox v. Iowa Health Sys.*, No. 3:18-CV-00327-JDP, 2021 WL 826741, at *5 (W.D. Wis. Mar. 4, 2021) ("Data breach litigation is evolving; there is no guarantee of the ultimate result."); *Gaston v. FabFitFun, Inc.*, 2021 WL 6496734, at *3 (C.D. Cal. Dec. 9, 2021) ("Historically, data breach cases have experienced minimal success in moving for class certification."). Second, even if Plaintiffs prevailed on a motion to dismiss, prevailed on a motion for class certification, successfully defeated all of Defendant's other objections and motions, and proceeded to trial, Plaintiffs would still face significant risk, cost, and delay, including likely interlocutory and post-judgment appeals.

Comparing the risk, cost, and delay posed by proceeding to trial, the proposed Settlement provides certain, substantial, and immediate relief to the Settlement Class. The Settlement ensures that Settlement Class Members with valid claims for Documented Losses or who elect to receive a Cash Award will receive timely compensation. (SA, ¶ 28). Moreover, the Settlement provides Settlement Class Members with access to credit monitoring and identity theft protection services. (*Id.* ¶ 29). These are meaningful benefits that may not be available after trial. Accordingly, the substantial cost, risk, and delay of the trial and appeal process support finding that the Settlement is reasonable, fair, and adequate. *See In re Telectronics Pacing Sys., Inc.*, 137 F. Supp. 2d 985, 1013 (S.D. Ohio 2001) (finding the expense and possible duration of the litigation are factors to be considered in evaluating a settlement); *Lucyk v. Materion Brush Inc.*, No. 3:20-CV-2340, 2023 WL 4405280, at *4 (N.D. Ohio July 7, 2023) (finding that where the case "involve[d] complex issues of fact, contested legal theories, and without settlement would likely continue for a considerable duration and involve increased expense" the settlement was fair, reasonable, and adequate.); *Chambers v. Cont'l Secret Serv. Bureau, Inc.*, No. 3:22-CV-468, 2024 WL 4363161, at *6 (N.D. Ohio Sept. 30, 2024) (granting final approval where the

settlement "secure[d] a substantial benefit for the Class in a highly complex action, undiminished by further expenses, and without delay, costs, and uncertainty of protracted litigation.") (citation omitted).

### ii. Rule 23(e)(2)(C)(ii) and Rule 23(e)(2)(D): The Method of Distributing Relief Will be Equitable and Effective.

In accordance with Rule 23(e)(2)(c)(ii) and Rule 23(e)(2)(D), the proposed distribution process will be equitable and effective. As referenced above, all Settlement Class Members are eligible to make a claim for Documented Losses or a Cash Award. (SA, ¶ 28). Additionally, all Settlement Class Members are eligible to claim three (3) years of CMIS. (*Id.* ¶ 29). The available relief was clearly detailed in the Notice, which was provided to all Settlement Class Members, laying out the benefits to which they are entitled. (Kroll Decl., at Exs. C, D, E). Settlement Class Members were able to submit their claims through a simple online form or by mail during a sufficiently long claims period.[3] (*Id.* ¶ 15). The task of validating these claims will be delegated to the Settlement Administrator, a neutral party which has significant experience processing these claims in similar cases. (*Id.* ¶¶ 2,15). Thus, the only difference in treatment among Class Members is that those who incurred and submitted claims for Documented Losses will appropriately and equitably receive payments in proportion to the amount of their losses. Thus, the method of distributing the relief is equitable and effective, and the proposed Settlement is fair, adequate, and reasonable under this factor.

### iii. Rule 23(e)(2)(C)(iii): The Terms Relating to Attorneys' Fees are Reasonable.

Class Counsel requested $1,072,500.00 for attorney fees (approximately thirty three percent (33%) of the $3,250,000.00 cash common fund). (ECF No. 47). This request is on par

---

[3] The claims deadline is February 18, 2025. (Kroll Decl., ¶ 15).

with awards routinely granted by courts in the Sixth Circuit as laid out in the previously filed Attorneys' Fee Motion. (*Id.*); *see also Johnson v. Midwest Logistics Systems, Ltd.*, No. 2:11-CV-1061, 2013 WL 2295880, at *6 (S.D. Ohio May 24, 2013) ("[E]mpirical studies show that, regardless whether the percentage method or the lodestar method is used, fee awards in class actions average around one-third of the recovery."). Therefore, this factor also supports approval of the proposed Settlement.

### 4. Rule 23(e)(3): Other Agreements.

Apart from the Settlement Agreement, there are no additional agreements between the Parties or with others made in connection with the Settlement. Accordingly, this factor weighs in favor of final approval of the Settlement.

### B. The Sixth Circuit's *UAW* Factors Weigh in Favor of Final Approval.

### 1. The Settlement Agreement is the Result of Informed, Non-Collusive, Arm's Length Negotiations Between the Parties.

The first factor heavily weighs in favor of granting final approval. "Courts presume the absence of fraud or collusion unless there is evidence to the contrary." *Carr v. Guardian Healthcare Holdings, Inc.*, No. 2:20-CV-6292, 2022 WL 501206, at *5 (S.D. Ohio Jan. 19, 2022) (citation omitted). Negotiations overseen by a neutral mediator are given extra weight. *See Bert v. AK Steel Corp.*, 2008 WL 4693747, at *2 (S.D. Ohio Oct. 23, 2008) ("[P]articipation of an independent mediator in settlement negotiations virtually insures (sic) that the negotiations were conducted at arm's length and without collusion between the parties").

Here there is no evidence of fraud or collusion because the Settlement was the result of informed arm's length negotiations between the Parties. This Settlement was achieved only after significant litigation, the exchange of pre-mediation discovery, the exchange of detailed mediation statements, and a full-day mediation session with highly respected mediator, Hon. Wayne R.

Andersen (Ret.) of JAMS. (Federman Decl., ¶ 5). Judge Andersen has substantial experience mediating and resolving complex class actions, including data breach class action settlements.[4] Judge Andersen's active involvement ensured that the negotiations proceeded at arm's length. (*Id.*). Indeed, it was not until after an all-day mediation with hard bargaining on both sides that a mediator's proposal was ultimately made and accepted by the Parties. (*Id.*). Therefore, the first *UAW* Factor supports final approval. *See Carr*, 2022 WL 501206, at *5 (finding no evidence of fraud or collusion where "the parties reached a settlement after an extensive review and computation of damages, informal discovery exchanged between the parties, discussion of the parties' respective damages models, and vigorous debating of the parties' respective legal and factual positions.").

### 2. The Complexity, Expense, and Likely Duration of the Litigation Favors Approval of the Settlement.

The second *UAW* factor also supports final approval. *See In re Delphi Corp. Sec., Derivative & "ERISA" Litig.*, 248 F.R.D. 483, 497 (E.D. Mich. 2008) ("[E]xpense and possible duration of litigation are major factors to be considered in evaluating the reasonableness of a settlement"). "For class actions in particular, courts view settlement favorably because it avoids the costs, delays and multitudes of other problems associated." *Id.*

This action has been pending since 2023 and has already involved a contested motion to dismiss, the exchange of informal discovery, and intense negotiations amongst counsel. Absent settlement, this case could continue to drag on for additional years. Continued pre-trial litigation would be extensive, with voluminous discovery needed from Progressive, the third-party call center at the center of the Data Incident, and any third-party companies that Progressive used in an information technology capacity. Experts would be required to testify regarding Progressive's

---

[4] https://www.jamsadr.com/andersen/.

data security practices and how they compare to industry standard practices. Substantial fact-finding would be required into what information was compromised, how it was compromised, and the type of impact this has had, and will continue to have, on the Settlement Class. Plaintiffs would also need to survive potential dispositive motions and prevail on a motion for class certification. Such motion practice, and potential appeals, could consume years, during which the law could change and threaten the claims. Given the complexity of the claims and arguments here, a lengthy trial would follow. Litigation would be extraordinarily complex, and it could take several years for the Class to see any real recovery, if any at all. Thus, this factor weighs heavily in favor of final approval. *See UAW v. Gen. Motors Corp.*, 2006 WL 891151, at *17 (E.D. Mich. Mar. 31, 2006) ("The obvious costs and uncertainty of such lengthy and complex litigation weigh in favor of settlement."); *Mullins v. S. Ohio Pizza, Inc.*, No. 1:17-CV-426, 2019 WL 275711, at *2 (S.D. Ohio Jan. 18, 2019) (noting that because the litigation was "difficult and complex" this weighed in favor of final approval of the settlement).

### 3. The Parties Engaged in Sufficient Fact-Finding.

The Court next asks whether the plaintiffs has enough information to "adequately assess their case and the desirability of the proposed settlement" at this stage of the proceedings. *Kritzer v. Safelite Solutions, LLC*, 2012 WL 1945144, at *7 (S.D. Ohio May 30, 2012). Courts often "defer to the judgment of experienced trial counsel with regard to the evaluation of the strength of the case and the desirability of settlement at this stage of the proceeding." *Id.* "[T]he absence of formal discovery is not unusual or problematic, so long as the parties and the court have adequate information in order to evaluate the relative positions of the parties." *Barnes v. Winking Lizard, Inc.*, No. 1:18CV952, 2019 WL 1614822, at *3 (N.D. Ohio Mar. 26, 2019)

Here, although the Parties reached a proposed settlement before engaging in formal discovery, Class Counsel made an informed decision regarding the appropriateness of settlement.

12

Prior to negotiating the Settlement, Class Counsel sought and obtained informal discovery from Progressive on a number of topics, including: the number of individuals whose PII was compromised during the Data Incident; the types of PII potentially compromised; the mechanics of the Data Incident; the remedial actions taken after the Data Incident; and the terms of any potentially applicable insurance coverage. (Federman Decl., ¶ 7). Class Counsel thoroughly evaluated this information in their analysis of damages. (*Id.*). Through the above process and the mediation, Class Counsel came to understand the Data Incident, and the issues arising from it, and obtained an excellent settlement for the Settlement Class Members. (*Id.* ¶¶ 8, 13). This information, combined with Class Counsel's vast experience in data breach litigation, gave Class Counsel all the information they needed to "adequately assess the[] case and the desirability of the proposed settlement." *See Kritzer*, 2012 WL 1945144, at *7; *Int'l Union, United Auto., Aerospace, & Agr. Implement Workers of Am. v. Gen. Motors Corp.*, No. 07-CV-14074-DT, 2008 WL 2968408, at *26 (E.D. Mich. July 31, 2008) (noting the use of informal discovery as an adequate tool for class counsel to make an informed decision). Thus, the Court should find that Class Counsel conducted sufficient fact-finding.

### 4. The Settlement Provides Favorable Relief when Weighed Against the Likelihood of Success on the Merits.

To "judge the fairness of a proposed compromise," a court "weigh[s] the plaintiff's likelihood of success on the merits against the amount and form of the relief offered in the settlement." *Int'l Union, United Auto., Aerospace & Agr. Implement Workers of Am. v. Gen. Motors Corp.*, 497 F.3d 615, 631 (6th Cir. 2007). While Plaintiffs are confident in their claims, proceeding to trial presents real risk, as is true in all complex class actions—and this area of law is especially risky, as noted in Section V(A)(3)(i), *supra*. *See also In re Countrywide Fin. Corp. Customer Data Sec. Breach Litig.*, No. 3:08-MD-01998, 2010 WL 3341200, at *6 (W.D. Ky. Aug.

13

23, 2010) (noting that continued data breach litigation would be "unlikely to produce the plaintiffs' desired results" and that settlement offered "a reasonable resolution that properly addresse[d] the tricky issues presented by data breaches.").

To the extent the law has gradually accepted this relatively new type of litigation, the path to a class-wide monetary judgment remains unforged, particularly in the area of damages. Given the risk and uncertainty, settlement is the more prudent course when a reasonable agreement can be reached. The damages methodologies in this case, while theoretically sound in Plaintiff's view, remain untested in a disputed class certification setting and unproven in front of a jury. And as in any data breach case, establishing causation on a class-wide basis is rife with uncertainty. *See In re Hannaford Bros. Co. Cust. Data Sec. Breach Litig.*, 293 F.R.D. 21 (D. Me. 2013); *see also In re Blackbaud, Inc., Customer Data Breach Litig.*, No. 3:20-MN-02972-JFA, 2024 WL 2155221 (D.S.C. May 14, 2024) (denying class certification in large data privacy case).

In light of the above, the $3,250,000.00 non-reversionary Settlement Fund achieved for the Settlement Class of approximately 350,000 Settlement Class Members is an outstanding result. (Federman Decl., ¶ 6). The Settlement Fund amounts to $9.29 per Settlement Class Member and exceeds other data breach settlements approved in the Sixth Circuit. *See, e.g.*, *Thomsen v. Morley Companies, Inc.*, No. 1:22-CV-10271, 2023 WL 3437802 (E.D. Mich. May 12, 2023) (approving a data breach settlement fund of $4.3 million for a class of 701,280 individuals, amounting to $6.13 per class member); *In re Lansing Cmty. Coll. Data Breach Litig.*, No. 1:23-CV-00738-PLM, ECF Nos. 57, 64 (W.D. Mich. Jan. 23, 2025) (common fund of $1,450,000.00 achieved for a class of approximately 757,832 individuals); *In re Wright & Filippis, LLC Data Sec. Breach Litig.*, No. 2:22-CV-12908-SFC, 2024 WL 3083436 (E.D. Mich. June 20, 2024) (granting final approval of common fund settlement of $2,900,000.00 with approximate per person value of $3.30); *Tucker v. Marietta Area Health Care Inc. d/b/a Memorial Health Sys.*, No. 2:22-cv-00184 (S.D. Ohio Dec.

14

7, 2023) (granting final approval of settlement with approximate per person value of $8.08 per person). The settlements cited above underscore the exemplary resolution for the Settlement Class achieved here, which supports final approval.

### 5. The Opinions of Class Counsel and the Class Representatives.

"The Sixth Circuit has observed that when experienced counsel immersed in the legal and factual issues comprising a class action recommend approval of their class settlement, their recommendations are entitled to deference." *Shy v. Navistar Int'l Corp.*, No. 3:92-CV-00333, 2022 WL 2125574, at *7 (S.D. Ohio June 13, 2022) (citing *Williams v. Vukovich*, 720 F.2d 909, 922 (6th Cir. 1983) (a district court "should defer to the judgment of experienced counsel who has competently evaluated the strength of his proofs" and that deference "should correspond to the amount of discovery completed and the character of the evidence uncovered").

Here, Class Counsel and the Class Representatives endorse and support the Settlement. (Federman Decl. ¶ 13). They do so because, as explained herein, this Settlement is an excellent result for Settlement Class Members in light of the risks of continued litigation, particularly when compared to similar data breach settlements. *See* Sections V(A)(3)(i) and V(B)(4), *supra*. This *UAW* factor therefore also favors final approval.

### 6. The Reaction of Absent Settlement Class Members.

In most class action settlements, a small number of opt-outs and objections "are to be expected" and do not impact the Settlement's fairness. *In re Cardizem CD Antitrust Litig.*, 218 F.R.D. 508, 527 (E.D. Mich. 2003) (citations omitted); *see also Olden v. Gardner*, 294 F. App'x 210, 217 (6th Cir. 2008) (inferring that most "class members had no qualms" with a settlement in which 79 out of 11,000 class members objected). But here, absolutely ***no*** Class Members objected to any aspect of the Settlement and only three (3) Class Members requested exclusion from the

15

Settlement.[5] (Kroll Decl., ¶¶ 18–19). Moreover, the Settlement has received a higher-than-normal claims rate. As of the date of Kroll's Declaration, the claims rate is 5.54%. (*Id.* ¶ 15). The claims rate is expected to increase prior to the Final Fairness Hearing on February 25, 2025, because the Claims Deadline is not until February 18, 2025. (*Id.*). Based on Kroll's experience administering data incident settlements, this claim rate is higher than the average for such cases. (*Id.*). Across data incident settlements that Kroll has administered generally, the average claim rate is approximately 3% with a median rate of approximately 2%. (*Id.*). Where the overall reaction of the class has been positive—such as it is here—this factor weighs in favor of final approval. *Shy*, 2022 WL 2125574, at *7 ("No objections have been filed and the overall reaction of absent Class Members has been positive, supporting final approval."); *Satterly v. Airstream, Inc.*, No. 3:19-CV-107, 2020 WL 6536342, at *11 (S.D. Ohio Sept. 25, 2020) ("The fact that there has been only one request to opt out of the settlement and no objections demonstrates that class members recognize the settlement's substantial benefit as a result of Class Counsel's efforts."); *Harsh v. Kalida Mfg., Inc.*, No. 3:18-CV-2239, 2021 WL 4145720, at *9 (N.D. Ohio Sept. 13, 2021) (finding that only eleven (11) opts outs and no objections "demonstrate[d] that class members recognize[d] the Settlement's substantial benefit as a result of Class Counsel's efforts").

### 7.  The Settlement is in the Public's Interest.

Finally, "there is a strong public interest in encouraging settlement of complex litigation and class action suits because they are notoriously different and unpredictable and settlement conserves judicial resources." *In re Cardizem CD Antitrust Litig.*, 218 F.R.D. at 530; *Carr*, 2022 WL 501206, at *7 ("The public interest favors the settlement of class action litigation."). The settlement of a data breach class action affecting approximately 350,000 people is consistent with

---

[5] The deadline to object or opt-out of the Settlement was January 17, 2025. (Kroll Decl., ¶ 17).

the public interest because it "provides relief to the Class Members, avoids further litigation in a complex case, and frees the Court of expending further judicial resources." *Carr*, 2022 WL 501206, at *7

*       *       *

Therefore, given that all of the Rule 23 factors and the *UAW* factors weigh in favor of final approval, the Court should find the Settlement is fair, adequate, and reasonable and grant final approval.

## VI. NOTICE SATISFIED DUE PROCESS AND RULE 23

At preliminary approval, the Court approved the Parties' proposed notice plan, finding it met the requirements of Rule 23 and Due Process. (ECF No. 45). That plan has now been carried out by settlement administrator, Kroll. (*See* Kroll Decl., ¶¶ 4–15). As outlined in detail in Kroll's supporting declaration, the Notice Plan and its execution satisfied all the requirements of Rule 23(c).

To satisfy due process, notice to class members must be the best practicable method and reasonably calculated under all the circumstances to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections. Fed. R. Civ. P. 23(e); *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 812 (1985). Notice provided to the class must be sufficient to allow class members "a full and fair opportunity to consider the proposed decree and develop a response." *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 315 (1950). While individual notice should be provided when class members can be located and identified through reasonable effort, notice may be provided by U.S. mail, electronic mail, or other appropriate means. Fed. R. Civ. P. 23(c)(2)(B).

The direct mail notice plan utilized here is the gold standard and is consistent with notice programs approved by this Court and other courts in this Circuit. On October 16, 2024, Kroll

17

received two (2) data files from Defendant that contained 349,840 unique class member names and physical mailing addresses. (Kroll Decl., ¶ 8). Using this data, on November 18, 2024, Kroll caused 349,840 Postcard Notices to be mailed via first-class mail. (*Id.* ¶ 10). Kroll estimates the Postcard Notices reached approximately 98.44% of the Settlement Class. (*Id.* ¶ 13). This reach rate is consistent with other court-approved, best-practicable notice programs and Federal Judicial Center Guidelines, which state that a notice plan that reaches[6] over 70% of targeted class members is considered a high percentage and the "norm" of a notice campaign.[7] In addition to the direct notice provided via mail, Kroll established a dedicated settlement website, a toll-free phone number, email address, and post office box that Settlement Class Members could use to gain more information about the Settlement. (*Id.* ¶¶ 5–9). The notices and website adequately informed Settlement Class Members of the nature of the action, the definition of the class, the claims at issue, the ability of a class member to object or exclude themselves and/or enter an appearance through an attorney, and the binding effect of final approval and class judgment. (*Id.* at Exs. C, D, E).The Notice utilized clear and concise language that is easy to understand and was organized in a way that allowed Settlement Class Members to easily find any section that they may be looking for. Thus, it was substantively adequate. (*Id.*). As such, the Settlement Class was provided with the best practicable notice under the circumstances. *See McKnight v. Erico Int'l Corp.*, 655 F. Supp. 3d 645, 660 (N.D. Ohio 2023) (finding notice plan where over 98% of class members received mailed notice "was the best practicable under the circumstances"); *Carr*, 2022 WL 501206, at *5 (approving notice sent to all class members by first class mail with a reach rate of

---

[6] Fed. Jud. Ctr., *Judges' Class Action Notice and Claims Process Checklist and Plain Language Guide* (2010), *available at* https://www.fjc.gov/sites/default/files/2012/NotCheck.pdf. The guide suggests that the minimum threshold for adequate notice is 70%.
[7] Barbara Rothstein and Thomas Willging, Federal Judicial Center Managing Class Action Litigation:  A Pocket Guide for Judges, at 27 (3d Ed. 2010).

97.8%); *Gascho v. Glob. Fitness Holdings, LLC*, 822 F.3d 269 (6th Cir. 2016) (Sixth Circuit found that the notice and claims processes satisfied Rule 23 where 90.8% of notices were successfully delivered to addresses associated with class members).

In sum, the notice program was robust, effective, and met all Due Process requirements, as well as the requirements of Rule 23(c). This final factor weighs in favor of final approval.

## VII.    CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court enter the proposed order granting final approval of the Settlement.

Date: February 11, 2025                              Respectfully submitted,

                                                     */s/: William B. Federman*
                                                     William B. Federman (pro hac vice)
                                                     **FEDERMAN & SHERWOOD**
                                                     10205 N. Pennsylvania Ave.
                                                     Oklahoma City, OK 73120
                                                     Telephone: (405) 235-1560
                                                     *wbf@federmanlaw.com*

                                                     Gary M. Klinger (pro hac vice)
                                                     **MILBERG COLEMAN BRYSON
                                                     PHILLIPS GROSSMAN LLC**
                                                     227 W. Monroe Street, Suite 2100
                                                     Chicago, IL 60606
                                                     Phone: (866) 252-0878
                                                     *gklinger@milberg.com*

                                                     ***Interim Co-Lead Class Counsel for
                                                     Plaintiffs and the Putative Class***

                                                     Brian D. Flick, Esq (OH 0081605)
                                                     DannLaw
                                                     15000 Madison Avenue
                                                     Lakewood, OH 44107
                                                     (513) 645-3488
                                                     (216) 373-0536 facsimile
                                                     *notices@dannlaw.com*

*Interim Liaison Class Counsel for*
*Plaintiffs and the Class*

## CERTIFICATE OF SERVICE

I hereby certify that on February 11, 2025, a true and correct copy of the foregoing was electronically filed with the Clerk of Court using CM/ECF. Copies of the foregoing document will be served upon interested counsel via transmission of Notices of Electronic Filing generated by CM/ECF.

/s/ *William B. Federman*
William B. Federman